## JOHN A. FARWELL, Comptroller,

### V.

## THE BENEVOLENT ASSOCIATION OF THE PAID FIRE DEPARTMENT.

1. INSURANCE LAW—LICENSE FEE—REPEAL.—The provisions of the revised charter of the city of Chicago, requiring agents of foreign insurance companies doing business in this State to pay a municipal license fee, and further providing that one-eighth of the amount so paid shall be set apart to create a fund for the relief of distressed firemen, are repealed by section 30 of the insurance law of 1869.

2. REPEAL OF LAW BY IMPLICATION.—The provisions of the charter of 1863 requiring payment to the city by such insurance companies of two per cent. of the gross premiums received, and the act of 1872 requiring the payment of two per cent. of the net premiums received are so far inconsistent that they both cannot stand together, and the former is repealed by the latter by implication.

3. APPELLEE NO LONGER ENTITLED TO FUND.—Under the charter as it formerly existed, appellee received one-eighth of the amount paid to the city as license fee, but that law being abrogated by the act of 1872, the revenue to appellee terminated with it.

4. ACT OF 1877.—If the act of 1872 could be construed as creating a fund identical with the charter of 1863, still the act of 1877, providing that the fund derived from licenses to foreign insurance companies should be paid to other beneficiaries than those named in appellee's charter, operated as a repeal of that provision of appellee's charter, and divested it of the right to further claim upon such fund.

5. RIGHTS VESTED BY CHARTER.—The provisions of appellee's charter requiring payment to it of a portion of the fund aforesaid is not such a vested right as cannot be changed by the legislature. It would be carrying the doctrine of vested rights to an unwarrantable length to hold that a fund derived from the taxation of a particular business could, in this manner, be perpetually and irredeemably appropriated to the purposes of a private corporation.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN G. ROGERS, Judge, presiding.    Opinion filed May 2, 1879.

Mr. JOSEPH F. BONFIELD, for appellant; that the provisions of the charter of 1863, providing for license fees from insurance companies, was repealed by the law of 1869, cited Van Inwagen v. The City of Chicago, 61 Ill. 31.

Farwell v. Benevolent Ass'n Paid Fire Dep't.

The effect of a repealing statute is to obliterate the prior law: Ray v. Goodwin, 4 Moore & Payne, 341; Dwarris on Statutes, 676.

The charter of appellee did not confer vested rights so as to place them beyond the power of the legislature: Thorpe v. R. & B. R. R. Co. 27 Vt. 149; Dingman v. The People, 51 Ill. 277.

The imposition of these insurance rates was a tax under the police power of the State: Ducat v. City of Chicago, 48 Ill. 172; The People v. Powers, 25 Ill. 187.

Mr. EGBERT JAMIESON, for appellee; that repeal of a statute by implication is not favored, and where two acts are seemingly repugnant, they should, if possible, be so construed that the latter may not operate as a repeal of the former, cited Dwarris on Statutes, 673; Bacon's Abr. title "Statutes D."; Bowen v. Lease, 5 Hill, 221; Bruce v. Schuyler, 4 Gilm. 221; Kinney v. Mallory, 3 Ala. 626; Planters' Bank v. The State, 6 Smedes & M. 628; Town of Ottawa v. County of LaSalle, 12 Ill. 339; McFarland v. Bank of the State, 4 Pike, 410.

The charter of appellee became a contract which a subsequent legislature could not impair: Home of the Friendless v. Rouse, 8 Wall. 430; The Washington University v. Rouse, 8 Wall. 439; Bruffett v. Great Western R. R. Co. 25 Ill. 353.

BAILEY, J.  This is a petition by the Benevolent Association of the Paid Fire Department of the City of Chicago, a corporation created by a special act of the General Assembly, approved March 5, 1867, for a mandamus upon John A. Farwell, Comptroller of the City of Chicago, commanding him to pay over to said corporation one-eighth of the two per cent. of the premiums received by the agents of fire insurance companies not incorporated under the laws of said State, doing business in said city, required by law to be paid into the treasury of said city.  The petition alleges that, up to January 1, 1877, the comptroller had paid said one-eighth of said two per cent. to said corporation, but had refused to make such payment since that time, on the ground that the act under which such

payment was required has been repealed. The petition further alleges that since January 1, 1877, large sums of money arising from said two per cent. of premiums had been paid into the city treasury, one-eighth of which would amount to at least $3,281.97; that large sums of money were being continually collected from said source, one-eighth of which the petitioner is entitled to receive; that the petitioner had demanded said moneys, and that the Comptroller had refused to pay over the same. A demurrer to the petition was interposed by the Comptroller, which the Court overruled, and the Comptroller electing to abide by his demurrer, a peremptory writ of mandamus was ordered to issue. To reverse said judgment this appeal is prosecuted.

The claim of the petitioner to the moneys in question is based upon the provisions of the revised charter of Chicago, of February 13, 1863, and also upon the provisions of the petitioner's charter. By section 5, chapter 8, of the revised charter of Chicago (Private Laws, 1863, p. 98), it was provided that all corporations, companies or associations, not incorporated under the laws of this State, engaged in said city in effecting fire, marine, or life insurance, should pay to the city treasurer two per cent. of all premiums received or agreed to be paid for any insurance effected or agreed to be effected in said city by or with such corporations, companies or associations, respectively, during the half year ending on the first day of every July and January. It further required every person who should act in said city, as agent or otherwise, for such corporation, company or association, to render to the comptroller, on or before the fifteenth day of January and July in each year, an account, under oath, of all premiums received or contracted for during the preceding half year, specifying separately the amount received for fire, marine and life insurance; and to pay over to the city treasury at the time of rendering such account, said two per cent. of such premiums. Section 6 required the comptroller to keep accounts of moneys received from agents on account of premiums on fire, marine and life insurance, separately, and provided that the fire insurance rates should be used only for the purpose of promoting the efficiency of the fire

department of said city, and providing a fund for the relief of disabled firemen.    By section 8, chapter 12, of said charter, it was further provided that one-eighth part of the amount of all fire insurance rates which should be annually paid into the city treasury should be reserved and set apart to create a fund for the relief of distressed firemen who might become disabled in the service of the city, and should be used solely for that purpose; and that said money should be disbursed in such sums and under such rules and regulations as the common council should prescribe, the remaining seven-eighths to be retained by the city and allowed to accumulate until a sufficient sum should be realized to defray the expense of establishing a fire-alarm or fire-telegraph system in said city, and then to be used for that purpose, after which said seven-eighths was to be applied to the purchase of fire-engines and other apparatus used for the extinguishment of fires.    Private Laws 1863, p. 126.

The petitioner was, by its charter, created a private corporation, and vested with the attributes usually pertaining to such bodies, and by section 3 of that act (Vol. 1 Private Laws, 1867, p. 148), it was declared that the object of the association should be to create a fund and provide means for the relief of the distressed, sick, injured and disabled members thereof, and their immediate families, and that all the property and money acquired by said association should be held and used solely for that purpose; and it was further provided, " that the one-eighth of the amount of all fire insurance rates now annually paid into the city treasury to create a fund for the benefit of disabled or distressed firemen, who may become disabled while in the service of the city of Chicago, shall be annually paid by the comptroller of the city to the association, to be invested and held by them as a trust fund for the benefit of firemen who shall be or may become disabled while in the service of the city."

On the 27th of June, 1868, the common council of the city of Chicago passed an ordinance reciting the incorporation of the petitioner and the provisions of section 3 of its charter, and ordering the comptroller, in accordance therewith, to pay semiannually to the proper officer of said association said one-eighth of said fire insurance rates.

Two questions have been presented in the briefs of counsel, which will be considered in their order. First, whether the law requiring the moneys in question to be paid to the petitioner has been repealed by subsequent legislation; and second, whether the petitioner obtained by its charter a vested right to receive said moneys, which is irrepealable, and which the legislature has no power to divest.

The first legislation bearing upon these questions to which our attention is directed, is found in section 30 of "An act to incorporate and govern fire, marine and inland navigation insurance companies doing business in the State of Illinois," approved March 11, 1869. By that section it was provided that every agent of any insurance company incorporated by the authority of any other State or government, should return to the proper officer of the county, town, or municipality in which the agency is established, in the month of May, annually, the amount of the net receipts of such agency, which should be entered on the tax-lists of the county, town and municipality, and subject to the same rate of taxation, for all purposes—state, county, town and municipal—that other personal property is subject to at the place where located, said tax to be in lieu of all town and municipal licenses; and that all laws and parts of laws inconsistent with said section were thereby repealed, provided that the provisions of said section should not be construed to prohibit cities having an organized fire department from levying a tax or license fee, not exceeding two per cent., in accordance with the provisions of their respective charters, said gross receipts to be applied exclusively to the support of the fire department of such city. Public Laws 1869, p. 228.

It would seem to be immaterial as to which of the first mentioned statutes, viz: that portion of the city charter requiring this money to be paid by the insurance agents into the city treasury, or that portion of the petitioner's charter requiring its payment by the city to the association, is repealed, as the abrogation of either divests the right of the association to receive such payment. All that was granted the petitioner was the right to receive one-eighth of all fire insurance rates

Farwell v. Benevolent Ass'n Paid Fire Dep't.

*then* annually paid into the city treasury. This manifestly was a grant to receive a revenue derived from this source, not in perpetuity, but so long as the law requiring its payment to the city should remain in force.

There can be no doubt that § 30 of the Insurance Law of 1869 was a repeal of the foregoing provisions of the Revised Charter of Chicago, unless such repeal is saved by the proviso in said section. Were this proposition otherwise doubtful, it has been settled by the decision of the Supreme Court in Van Inwagen v. City of Chicago, 61 Ill. 31. Does the case, then, come within the proviso? It may be observed that there is no averment in the petition that an organized fire department ever existed in the city of Chicago, and the record furnishes no evidence on that subject beyond what may be gleaned from the recitals by the legislature in the petitioner's charter, and by the common council of Chicago in the ordinance passed in pursuance thereof. It may well be doubted whether these recitals are sufficient to dispense with a direct averment of the fact in the petition.

But, assuming the existence of such organized fire department, we are inclined to the opinion that the obligation on the part of the agents of foreign insurance companies to pay to the city this two per cent. was not saved by the proviso. The proviso is not that section 30 shall have no application to cities where an organized fire department exists, but it merely recognizes, or perhaps by implication, confers the power to levy a tax or license fee, not exceeding two per cent. of the gross premiums. This would seem to be too considerable a departure from the provisions of the Revised Charter to have the effect of saving the latter from the operation of the repeal. Under the Revised Charter, the insurance rate was levied by the very terms of the law itself, and its amount fixed, and it was made absolutely payable without any action on the part of the city. The proviso gives the power, merely, to fix and levy a rate, which may be two per cent. or less, in the discretion of the city, and which can only be made payable by an affirmative act of the city, determining the rate and making the levy. In our opinion, then, the law upon which the petitioner's right to the

money in question must depend was repealed by the act of 1869.

By section 110 of "An act to provide for the Incorporation of Cities and Villages," approved April 10, 1872, and adopted by the people of the city of Chicago May 3, 1875, section 5 of chapter 8 of the Revised Charter of 1863, is revised, or re-enacted in substance, with this modification: the payment required to be made into the city treasury is two per cent. of the net instead of the gross premiums received in said city by the agents of foreign insurance companies. By the act of 1872, section 30 of the act of 1869, is undoubtedly repealed, but the act repealed by the act of 1869, is not thereby revived. But even if the provisions of the charter of 1863 were not repealed by the act of 1869, we think they are so far inconsistent with the act of 1872 that both cannot stand together. While it would be physically possible for the provisions of both to be enforced so as to require the payment of two per cent. on the gross, and also two per cent. on the net premiums, we do not think the reluctance of the law to sustain repeals by implication should be carried to that extent. The act of 1872 was evidently intended to be a revision of the entire subject, and to furnish in itself the full measure of tribute which the agents of foreign insurance companies should be compelled to pay to the local municipality. The money collected of insurance agents under the act of 1872, is not the money mentioned in the petitioner's charter, and required to be paid over to it. The charter embraced only money collected under a law then in force. That law being abrogated, the revenue thereby created terminated with it. The law of 1872 derives a revenue from the same source, it is true, but computed upon a different basis, and exacted by the requirements of a different statute, and so, in contemplation of law, constituting an entirely different fund.

By section 1 of "An act for the relief of disabled members of the Police and Fire Departments in Cities and Villages," approved May 24, 1877, and in force July 1, 1877, it is provided that one-fourth of all the rates, taxes and license fees, which are or may hereafter be required by law to be paid by

corporations, companies or associations, not incorporated under the laws of this State, engaged in any city or village in this State effecting fire insurance, shall be set apart by the treasurer of the city or village to whom the same shall be paid, as a fund for the relief of disabled members of the police and fire departments in such city or village. Section 2 constitutes the mayor or president of the board of trustees, and certain other officers of the city or village, a board by the name of "The Trustees of the Police and Firemen's Relief Fund," and the subsequent sections of the act vest said board with the exclusive control and management of said fund, and provide for its proper appropriation to the uses for which it is set apart by the act. Laws of 1877, p. 62.

As we have already seen, the last mentioned act assumes to deal with a sum entirely different from that appropriated by the third section of the petitioner's charter. But were this otherwise, and could we so construe the law as to hold that the insurance rates payable to the city under the act of 1872 constituted a fund legally indentical with the rates payable under the city charter of 1863, we think the act of 1877, so far inconsistent with the third section of the petitioner's charter as to operate as a repeal of said section. The legislature, in granting the petitioner its charter, made such appropriation out of the revenues derived from insurance rates for the relief of disabled firemen as it at that time deemed judicious and wise. By the act of 1877 the legislature re-considered the same subject, and set apart, out of a fund derived from the same source, twice the amount previously appropriated, and in doing so, joined the disabled members of the police and fire departments as the beneficiaries of its bounty. We think that by such appropriation, the legislature manifested a clear intention to limit the amount to be appropriated for the relief of disabled policemen and firemen to one-fourth of the fund in question. True, there would be no impossibility in the way of allowing both appropriations to stand, and thus apply three-eighths instead of one-fourth of the fund to the purposes named, but such course would be clearly repugnant to the last expression of the legislative will.

Farwell v. Benevolent Ass'n Paid Fire Dep't.

Had the legislature the power to so change the law as to divest the petitioner of its revenues derived from the insurance rates? On the part of the appellee, we are referred to adjudged cases where it has been held that provisions in the charter of a private benevolent corporation exempting its property from taxation by the state, constituted a valid contract, which could not be set aside by the legislature without the consent of the corporation. Such is unquestionably the law. We are referred to no case, however, where a provision in a private charter directing the payment to the corporation of a portion of the public revenues is held to be beyond legislative repeal. It would be carrying the doctrine of vested rights to an unwarrantable length to hold, especially in a case like the present, involving a fund derived from the taxation of a particular business, that such fund could be in this manner perpetually and irredeemably appropriated to the purposes of a private corporation. The right of the corporation to receive it might be divested, if indeed the legislature has power to divest it at all, in either of two ways: by repealing the law under which the revenue is raised, or by repealing that under which it is directed to be paid to the corporation. If the right to receive the fund appropriated by the charter cannot be taken away, then the State stands forever pledged, not only to pay over the money, but also to impose the tax by which the money is to be raised. In this case, the doctrine contended for would debar the State from remitting or modifying the tax imposed by the Revised Charter of 1863 on insurance agents, or from changing its fiscal or its police policy in relation to foreign insurance companies in this respect. We think no authority can be found sustaining such a doctrine, and upon principle it is, in our opinion, wholly untenable.

The demurrer to the petition should have been sustained. The judgment will be reversed and the cause remanded.

Reversed and remanded.